ARMSTRONG *v.* STATE.

Decided March 28, 1891.

1. *Justice of the peace—Jurisdiction—Malicious mischief.*

A justice of the peace. trying a criminal prosecution for maliciously killing an animal, under section 1654 of Mansfield's Digest, has jurisdiction to award three-fold damages to the injured owner as part of the punish ment, although the amount exceeds one hundred dollars, the limit of his civil jurisdiction.

2. *Motion for new trial—Discretion of trial court.*

A motion for a new trial upon the ground of newly discovered evidence is addressed to the legal discretion of the trial court.

APPEAL from *Newton* Circuit Court.

R. H. POWELL, Judge.

*J. M. Moore* for appellant.

1. The justice of the peace had no jurisdiction. Art. 7, sec. 40, Const.; Mansf. Dig., sec. 1654; 44 Wisc., 288; 22 Kans., 15 ; 32 Ark., 202; 1 Herm. on Est. and Res. Adj., pp. 107, 167. This case not only involves a matter of damages to personal property, but the object and effect of the statute is to redress and afford satisfaction for the private wrong as well as the punishment of the public offense.

2. Appellant was entitled to a new trial on the ground of newly discovered evidence. 2 Ark., 42; Rose Digest, p. 563; 10 Ark., 556.

3. The instructions were misleading. Malice is an essential ingredient of malicious mischief, and it must exist against the owner of the animal. 35 Ark., 345.

*W. E. Atkinson,* Attorney General, for appellee.

This is a prosecution under sec. 1654, Mansf. Dig.

1.   The damages are a part of the punishment.   Justices have jurisdiction of all misdemeanors.   See 19 Ark., 176.

2.   The newly discovered evidence could not have affected the verdict.

3.   The instructions were correct.   The motion is merely evidentiary.   Bur. Cir. Ev., 296.

MANSFIELD, J.   Armstrong was charged before a justice of the peace with malicious mischief.   The offense as alleged was committed by the killing of two horses belonging to one Holland.   The jury found him guilty and fixed his fine at the sum of one hundred dollars.   They assessed the value of the horses at two hundred dollars, and the justice thereupon rendered judgment in favor of the State for the fine, and in favor of Holland for three-fold the assessed value of his horses.   The defendant appealed to the circuit court, where the case was tried anew with the same result reached in the justice's court, except that the fine imposed on the appeal was only twenty dollars.   A new trial was refused, and the defendant seeks a reversal of the judgment of the circuit court on the following grounds: (1) want of jurisdiction in the justice of the peace; (2) newly discovered evidence; (3) error in court's charge to the jury.

1.   The offense for which the defendant was prosecuted is defined by section 1654 of Mansfield's Digest, which, omitting a proviso not applicable to this case, is as follows: "If any person shall wilfully and maliciously, by any means whatsoever, kill, maim or wound any animal of another which it is made larceny to steal, he shall, on conviction, be punished by a fine of not less than twenty nor more than one hundred dollars, or by imprisonment in the county jail for a period of not less than ten nor more than sixty days, or by both such fine and imprisonment, and shall, moreover, be liable to damages to the owner of the animal so killed, maimed or wounded, as in the preceding section provided."

The preceding section provides that: "Every person who shall knowingly administer any poison to any horse,

1. Jurisdiction of justice of the peace.

ass, mule, or to any cattle, hog, sheep, goat or dog, or maliciously expose any poisonous substance with intent that the same shall be taken or swallowed by any of the aforesaid animals, shall, on conviction, be punished in the manner prescribed by law for feloniously stealing property of the value of the animal so poisoned ; and the jury who shall try such cases shall assess the amount of damages, if any actual damage has occurred, occasioned by such poisoning or intent to poison, and the court shall render judgment in favor of the party injured for three-fold the amount so assessed by the jury."

The constitution of 1874 provided that justices of the peace should have such jurisdiction of misdemeanors as was then or might be prescribed by law: Art. 7, sec. 40, 3d clause. At that time a provision of the criminal code which still remains in force gave to justice's courts jurisdiction concurrent with the circuit courts, in " all matter less than felony." (Mansf. Dig., sec. 1966). It is conceded that under these two provisions—the one constitutional and the other statutory—justices of the peace have jurisdiction of all cases of misdemeanor; and it is not controverted that malicious mischief is an offense of that grade. But it is contended that this case is one to which the jurisdiction of the justice could not be made to extend without a violation of the constitutional provision limiting his jurisdiction in matters of damage to personal property to cases where the amount in controversy does not exceed the sum of one hundred dollars: Art. 7, sec. 40, 2d clause. In support of this contention it is argued that the assessment of damages made in Holland's favor was rather by way of redressing a private wrong than as a punishment for a public offense. The same position, in effect, was assumed by counsel in the case of *Lemon* v. *State*, 19 Ark., 172, which was also an appeal from a conviction for malicious mischief. But the court held that the provision of the statute giving the injured party three-fold the actual damage sustained made the act " highly penal;" and that the damages assessed were as much

a part of the punishment as the imprisonment. On this subject Mr. Justice Hanly, who delivered the opinion of the court, said: "It is not uncommon for the legislature to prescribe a double penalty for offenses, *e. g.*, personal punishment and pecuniary fine, and we know of no principle which the policy violates. Such was the evident design of the legislature in the act before us. It is true by the act we are considering, the legislature has seen fit to bestow the pecuniary fine upon the injured party, instead of appropriating it to the public; acting, we presume, upon the ground that the public wrong would be compensated by the imprisonment, and that the injured party would be restored to his rights and reimbursed in his damages by the pecuniary mulct." At the time of Lemon's conviction the statute punished the offender by imprisonment for a period of not less than six months. But it inflicted no pecuniary punishment, except such as resulted from the assessment of damages made in favor of the owner of the property. And yet it will be observed that the court in that case regarded the damages as being in effect a fine and part of the punishment for the public crime. The statute was amended in 1869 so as to provide, as it does at this time, that a fine of not less than twenty nor more than one hundred dollars shall be imposed, or that the accused shall be punished by imprisonment in the county jail for a period of not less than ten nor more than sixty days, or that he shall be punished by both such fine and imprisonment; and that damages shall also be assessed in favor of the owner of the property, as directed by the original act. The amended act, while thus reducing the period of imprisonment and permitting the jury to omit that part of the punishment entirely, imposes what it terms, apparently in contradistinction to the damages, "a fine." But, in the view taken of the original act in the case cited above, the effect of the amendment was to increase the pecuniary punishment, and the whole amount adjudged against the defendant is therefore to be regarded as in the nature of a fine—part of which goes to the State

and the residue to the injured party. Bearing in mind the nature of the offense and the greater severity with which the original act dealt with the offender, we cannot conclude that the legislature intended still further to mitigate the punishment by treating the damages otherwise than as part of the fine.

Our attention is called to an observation made by Chief Justice English, in *Floyd* v. *State*, 32 Ark., 200, to the effect that the sum adjudged to the injured party in that case was compensation for a personal wrong. This was not said by way of indicating an opinion on any question such as is raised here. But that case was a prosecution for malicious mischief, and, like this, originated in a justice's court where judgment was rendered against Floyd for a fine, and also for damages amounting to one hundred and fifty dollars. The conviction occurred several years after the adoption of the present constitution, and the report of the case contains no intimation that the validity of the judgment was questioned here. The decision on that appeal is therefore to be taken as a tacit recognition of the justice's jurisdiction, rather than as indicating any opinion against it. In the later case of *Schlief* v. *State*, 38 Ark., 522, prosecuted under the same statute and also originating in a justice's court, it is obvious that the recovery had in behalf of the person injured was regarded by this court as strictly a matter of criminal procedure.

By way of further argument against the jurisdiction of the justice, it is said that, when damages are assessed in favor of the injured party in prosecutions of this kind, a subsequent civil action for the same wrongful act would be barred by the judgment rendered in the criminal cause. We find no authority to support this contention and think it cannot be sustained upon principle. The owner of the property is not a party to the criminal prosecution and cannot control it. The charge may be dismissed without his consent, and he can prosecute no appeal from a judgment awarding him an insufficient compensation or none at all.

The doctrine of reasonable doubt prevails on the trial, and the offense is not made out without proof of malice. But in a civil action for the tort no such proof would be necessary, and a bare preponderance of the evidence in favor of the plaintiff would entitle him to a verdict. It would therefore be unjust to one who suffers from an act of malicious mischief to bar him of his remedy by civil action because of the mere entry of a judgment convicting the offender of the public wrong. The rule against such a result is, we think, well established. Freeman on Judgments, sec. 319; Bigelow on Estoppel, 115, 116; *Brown* v. *Swineford*, 44 Wis., 282.

In Massachusetts it was provided by statute that when, by reason of the negligence of a railroad corporation, the life of a passenger or other person not in the employment of such corporation was lost, the corporation should be punished by a fine of not less than $500 nor more than $5000, to be recovered by indictment and paid to the executor or administrator of the deceased for the use of his widow and children. A later statute provided that the corporation should in such case also be liable in damages for not less than $500 nor more than $5000, "to be recovered in an action of tort" by the executor or administrator for the use of the same parties. And it was held that "no criminal jurisdiction existing under the earlier statute" was taken away by the later enactment. *Kelley* v. *B. & M. Railroad*, 135 Mass., 449.

Whether the action of the person injured by an act of malicious mischief would be barred by accepting the damages adjudged to him in a criminal prosecution against the offender, is a question which does not arise on this appeal. *Commonwealth* v. *Metropolitan R. Co.*, 107 Mass., 236.

The framers of the constitution of 1874, it must be presumed, knew that the inferior courts had uniformly given to the statute punishing malicious mischief the construction indicated by the ruling of this court in *Lemon* v. *State*, 19

S C—24

Ark., *supra.* They knew, too, that justices of the peace were then exercising jurisdiction under the act without regard to the amount of damages to be assessed in favor of the person injured ; and that the statutes of this State had for more than thirty years made the offense a misdemeanor as it was at common law. And yet the constitution declared that, until otherwise provided by the legislature, justice's courts should continue to exercise jurisdiction concurrent with the circuit courts in all cases of misdemeanor. This necessarily included all misdemeanors committed by acts of malicious mischief. That such was the practical, contemporaneous construction given to the constitution is shown by the fact that in 1879 the general assembly amended and re-enacted the law against malicious mischief, giving it the form it now has in section 1654 of the Digest. See Cooley Const. Lim., 82–86 ; *Baker* v. *State,* 44 Ark., 137 ; *Board of Equalization Cases,* 49 Ark., 525 ; *Glidewell* v. *Martin,* 51 Ark., 570.

Our conclusion is that the second clause of section 40, article 7, of the constitution, cited as prohibiting the jurisdiction exercised by the justice in this case, applies only to civil actions, and that the limitation it imposes can have no application to criminal prosecutions for malicious mischief.

2. New trial.     2. It was within the legal discretion of the court below to grant or refuse the defendant's application for a new trial so far as it was made on the ground of newly discovered evidence. The record-discloses no abuse of that discretion, and, unless this appeared, the denial of the application is without avail as a cause for reversal. *Anderson* v. *State,* 41 Ark., 229.

3. The exception reserved to the charge of the court is confined to a single instruction. In that there was no error prejudicial to the defendant, when it is considered in connection with all the other instructions given to the jury. *Chappell* v. *State,* 35 Ark., 345.

The judgment is affirmed.