PERKINS *v.* STATE.

Opinion delivered April 27, 1925.

1. CRIMINAL LAW—WITHDRAWAL OF EVIDENCE—PREJUDICE.—Where defendant in a prosecution for assault with intent to kill, asked the prosecuting witness concerning such collateral matters as whether the witness had killed his brother, assaulted a deputy sheriff, or cut off some of his fingers to avoid draft during the war, he was bound by the negative answer of the witness, and was not prejudiced by court withdrawing such testimony from the jury.

2. WITNESSES—CROSS-EXAMINATION AS TO BIAS.—It was not error on cross-examination of a State's witness, who had testified that she disliked the defendant, to refuse to permit her to be asked why she disliked him.

3. HOMICIDE—ASSAULT TO KILL—INTENT.—Specific intent to take life is an essential ingredient of an assault with intent to kill.

4.  HOMICIDE—INTENT—STATEMENT OF DEFENDANT.—In a prosecu-
    tion for assault with intent to kill, a statement made by defend-
    ant two months after the shooting that he intended to kill the
    posecuting witness, and if he had had the pistol that he was
    then carrying he would have killed him, was competent to show
    defendant's intent at the time of the shooting.

Appeal from Little River Circuit Court; *B. E. Isbell,*
Judge; affirmed.

*James S. Steel, DuLaney & Steel,* and *Otis Gilleylen,*
for appellant.

*H. W. Applegate,* Attorney General, and *Darden
Moose,* Assistant, for appellee.

HART, J.  J. U. Perkins prosecutes this appeal to
reverse a judgment of conviction against him for the
crime of assault with intent to kill.

Briefly stated, the facts are that, in January, 1924,
J. U. Perkins shot Malvin Hudson three times with a
pistol, at the railroad station at Foreman, in Little
River County, Arkansas.  Both parties were engaged
in operating service cars, and both solicited the same
passengers as they alighted from the train. Hudson
secured a passenger which Perkins was trying to get.
After Hudson had helped the passenger in his car,
Perkins commenced to shoot at him.  The first shot
struck Hudson in the back, and two others also lodged in
his body.  Perkins afterwards stated that, if he had a
better pistol, he would have killed Hudson.  Hudson,
at the time, was unarmed and was making no attempt
whatever to assault Perkins.  The jury fixed the punish-
ment of Perkins at three years in the State Penitentiary.
No reversal of the judgment is asked on the ground that
the evidence is not legally sufficient to support the ver-
dict, or that his punishment is excessive.

The only ground relied upon by the defendant for
a reversal of the judgment is that the court erred in
admitting and excluding evidence.

In the first place it is earnestly insisted that the
court erred in excluding the testimony of Malvin Hudson
with reference to killing his brother, to assaulting a

deputy sheriff, and as to cutting off his own fingers in order to avoid the draft.

On cross-examination Hudson was asked if he had not killed his brother. He replied that he had not; but that, when he was a little boy about nine years old, he had gone hunting with his brother and, while going through a fence, his gun was accidentally discharged and killed his brother. He was then asked if he did not assault a certain deputy sheriff, and he replied that he had not. He was then asked if he had not cut off some of his fingers in order to avoid the draft during the World War. He answered that he had not. These were all collateral matters, and the defendant was bound by the answers of the witness. *McAlister* v. *State,* 99 Ark. 604; *Pearrow* v. *State,* 146 Ark. 201; and *Tullis* v. *State,* 162 Ark. 116.

The object of cross-examining a witness in collateral matters is to enable the jury to comprehend just what sort of a person they are called upon to believe. The defendant being bound by the answers of the witness on these collateral matters, it is manifest that he was not prejudiced by withdrawing the testimony from the jury.

In this connection it is also insisted that the court erred in excluding all the testimony with reference to the antecedents and associates of the prosecuting witness, Malvin Hudson. The only other matters that were excluded were where the witness had answered no to the questions propounded to him, and his answers in the negative show that his character was not in the least affected by the questions and answers. Hence no prejudice resulted to the defendant, and it is well settled that this court only reverses for prejudicial errors.

The next assignment of error urged for a reversal of the judgment is that the court erred in not allowing Mrs. J. C. Ward to state the particular matter which caused her to have ill feeling against the defendant. She had been asked whether or not she had any ill feeling against the defendant, and had answered no. She was

then asked if she disliked him, and replied that she did. This was sufficient, and the court did not err in refusing to allow her to be asked the particular matter which caused her to dislike the defendant. Her dislike of him, and not the reason for it, would be the cause which might affect her credibility as a witness.

The next assignment of error is that the court erred in allowing Mrs. J. C. Ward and Mrs. Jennie Prichett to state that, two months after the shooting, the defendant told them that he intended to kill Malvin Hudson, and, if he had had the pistol that he was then carrying, he would have killed him.

One of the essential ingredients of the offense of assault with intent to kill is the specific intent to take life, and this testimony was competent, with the other evidence, to show that the defendant intended to kill Hudson when he shot him. *Davis* v. *State,* 115 Ark. 566. No other assignment of error is relied upon for a reversal of the judgment.

It follows that the judgment will be affirmed.