GRAHAM *v.* STATE.

4229                                      154 S. W. 2d 584

Opinion delivered October 13, 1941.

*Jack Holt,* Attorney General, and *Jno P.. Streepey,* Assistant Attorney General, for appellee.

HOLT, J. Appellant, Weaver Graham, was charged in an information with burglary and grand larceny. A jury acquitted him on the count charging the crime of burglary, but convicted him on the count charging grand larceny and assessed his punishment at two years in the state penitentiary. No brief appears here for appellant.

The record reflects that appellant filed motion for a new trial, setting up seven grounds. The trial court denied the motion, and this appeal followed.

Grounds one, two and three questioned the sufficiency of the evidence to support the jury's verdict. The testimony on the part of the state (appellee here) discloses that appellant confessed to the arresting officer that he entered the store, which he was charged with having burglarized, and took the officer to the place where the stolen articles were concealed. Appellant concedes that he made the confession voluntarily.

The deputy sheriff, to whom appellant confessed, testified that sometime in the fall of 1939 the store of C. D. Jacobs, located in the old bank building at Lamar, Johnson county, Arkansas, was broken into; that he arrested appellant, who made a voluntary statement to him; that he did not promise appellant any immunity or anything of that nature to induce him to make the statement; that while he was taking appellant to Lamar, appellant said, " 'Just stop here,' and he told me all about it. He told me the ones that broke in. I said, 'Let's go back and get the merchandise.' Went back east of the house, there is a big hill. After we got part of the merchandise he said that the watch was down under the hill south of there by an old log under a rock. We went down there and fooled around a minute and came up to this rock by a little persimmon bush, turned the rock over and got the watch out. Then I brought him up to C. D. Jacobs' store and left the merchandise there, took an inventory of what we had found. Then I took him around behind the store and he showed me a stick, had a long stick, looked like a two by two, that they used to break the glass out with and reach in and open the door."

The owner of the store, C. D. Jacobs, testified that his store was burglarized on the 20th of November, 1939, and that there were two watches, tobacco, and other articles missing from the store the following morning. He further testified that the value of the missing articles was between $50 and $60.

It is our view that the evidence was ample to support the conviction.

The rule is well established that the confession of one charged with the commission of a crime, when coupled with proof that the crime was actually committed by someone, constitutes sufficient evidence to support a conviction.

In one of our leading cases on this question, *Greenwood* v. *State,* 107 Ark. 568, 156 S. W. 427, the rule is announced as follows: "In the case of *Melton* v. *State,* 43 Ark. 367, the court held that the confession of a prisoner accompanied with proof that the offense was actually committed by someone will warrant his conviction. That is to say, under our statute to warrant a conviction upon an extrajudicial confession of the accused, there must be independent evidence to establish that the crime has been actually perpetrated by someone. In the instant case there was independent testimony which showed that the deceased had been killed by someone and the circumstances independent of the confession strongly pointed to the defendant as the person guilty of the crime. . . ."

And later in *Thomas* v. *State,* 125 Ark. 267, 188 S. W. 805, this court again announced the rule in these words: "Appellant strongly insists that the evidence is insufficient to support the verdict. This cannot be true, however, if the confession is to be accepted. The owner of the store described the manner in which it was burglarized, and enumerated various articles which were stolen, and pursuant to appellant's confession some of these goods were located at the place where he had stated they would be found."

In grounds four and five, appellant attacks the verdict on the ground that it was reached by compromise and because only five members of the jury agreed to the ver-

dict on condition that appellant be given a suspended sentence. Upon a search of the record we have been unable to find anything to show that the verdict was reached by compromise.

It is true that the verdict, as returned by the jury, had written on it in pencil, "We, the jury, recommend suspended sentence." Upon observing the form of the verdict, the trial court interrogated the jury as follows: "By the Court: I notice that you recommend a suspended sentence. Are you just making that as a recommendation? By one of the Jurors: Yes, sir. By the Court; That is an unconditional verdict? By one of the Jurors: Yes, sir."

This court has many times held that the trial court is not bound to comply with the request of a jury that a sentence be suspended. The court has the authority to ignore the recommendation and impose sentence. In one of our late cases, that of *Criglow* v. *State*, 183 Ark. 407, 410, 36 S. W. 2d 400, this court said: "The jury returned a verdict of guilty and fixed the punishment at three years' imprisonment in the penitentiary, and recommended that the sentence be suspended. It is insisted that this recommendation rendered the verdict illegal, indefinite and void. We held to the contrary in the case of *Clarkson* v. *State*, 168 Ark. 1122, 273 S. W. 353, where sentence was imposed notwithstanding the recommendation of the jury that it be suspended. We there said: 'Under act 76, Acts 1923, p. 40, circuit judges are authorized, under certain circumstances, to suspend the sentences of convicted persons, but the act vests this discretion in the judge, and not in the jury. It would, of course, be proper for the court to consider any recommendation the jury might make in the matter, but the jury can only recommend and cannot control the discretion vested in the judge. *Kelley* v. *State*, 133 Ark. 261, 202 S. W. 49'." See, also, *Boatright* v. *State*, 195 Ark. 611, 113 S. W. 2d 107.

In the sixth ground of the motion for a new trial, appellant complains of instructions one to five, inclusive.

The first instruction contained the information without including the affidavit of the prosecuting attorney,

or formal parts, and was read to the jury as an instruction. We think no error was committed in giving this instruction.

In the recent case of *Malone* v. *State, ante* p. 796, 152 S. W. 2d 1019, a similar objection was made and there this court said:

"The reading of the information to a jury cannot, therefore, be considered as prejudicial to the defendant. The court, however, held that the affidavit of the prosecuting attorney should not be read to the jury. The Missouri statute, with reference to the reading of an information, is similar to our statute. In the instant case the affidavit of the prosecuting attorney was not read to the jury, and there was no error in the reading of the information to the jury."

Instruction two is one on the burden of proof, and similar in effect to instructions many times approved by this court.

Instruction three defined larceny and burglary in the identical terms of the statute. We have many times held that instructions which follow the wording of the statute, and are applicable to the facts in the particular case, are always proper. One of our latest cases on the point is *Gentry* v. *State,* 201 Ark. 729, 147 S. W. 2d 1.

Instructions four and five on reasonable doubt are old instructions that have been approved by this court many times.

Finally appellant complains because "the court erred in calling the jury back into the court room while they were deliberating and telling them that there was nothing complicated about the case and that it was very important that they render a verdict."

The admonition of the court, complained of by appellant, is as follows: "Gentlemen of the jury, you should vote your conscientious convictions and not give up any fixed opinion that you have, but you should go into the jury room with an open mind. This is not a complicated case and one that will have to be passed upon by a jury of Johnson county. It is expensive to the county to try these cases, and the defendant is now in jail, but that should not be considered by you in return-

ing a verdict. I don't want you to misunderstand me in this explanation. I want you to vote your conscientious convictions and stay with them as to that matter. If you think it would help you for me to read the instructions to you again I will be glad to do so. It is a question of fact for you to pass upon. If you can't return a verdict upon the merits of the case then the court can't help you. You know whether or not you can make any progress, you are the best judge. If you see that you are hopelessly locked then you should come back and so state. I am willing to stay here as long as you think there is any chance to make any progress. . . . I hope that you will not misunderstand me, I don't want you to make any concessions, but go in there with an open mind, discuss it freely among yourselves. I am going to let you go out for another thirty minutes. If you can't agree you will come back at that time.''

We think, however, that no error was committed by the court in thus admonishing the jury and that no prejudice resulted to the rights of appellant. It is our view that what the court said falls squarely within the rule announced in *Stepp* v. *State,* 170 Ark. 1061, 1072, 282 S. W. 2d 684, where it is said:

''This court, however, is committed to the general rule announced in a casenote to 11 Ann. Cas., p. 1134, to the effect that the trial court may detail to the jury the ills attendant upon a disagreement, the expense, the length of time it has taken to try the case, the length of time the case has been pending, and that the case will have to be decided by some jury upon the same pleadings and in probability upon the same testimony.

''Again, in a casenote to Ann. Cas. 1915D, p. 675, the general rule is stated to be that the trial court may detail to the jury the ills attendant on a disagreement and the improbability of securing a more honest or intelligent jury to try the case again in the event of a mistrial, and the evils of a hung jury generally.

''This court has, in effect, adopted the general rule just stated, and has held that the trial court may warn the jury to lay aside all pride of opinion and consult with each other for the purpose of harmonizing their views, if

possible, under the evidence, and that it was their duty to apply the law as given by the court to the facts in the case and deal with each other in a spirit of candor in order to arrive at a verdict. *Evans* v. *State,* 165 Ark. 424, 264 S. W. 2d 933; *Benson* v. *State,* 149 Ark. 633, 233 S. W. 758; and cases cited; *Mallory* v. *State,* 141 Ark. 496, 217 S. W. 482; and *Clarkson* v. *State,* 168 Ark. 1122, 273 S. W. 353."

Finding no error in this record, the judgment is affirmed.